655 A.2d 965

PAULA DE PONTREX OACHS, PLAINTIFF/RESPONDENT,
v. STANLEY P. STANTON AND EDWARD STANTON,
DEFENDANTS/APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued February 1, 1995—Decided March 30, 1995.

480

Before Judges SHEBELL, WALLACE and KLEINER.

*James R. Heaney* argued the cause for appellant Stanley Stanton (*Mr. Heaney* on the brief).

*Edward Stanton pro se* appellant argued the cause (*Mr. Stanton* on the brief).

*Edward T. Feurey* argued the cause for respondent (*Paschon and Feurey,* attorneys; *Mr. Feurey,* on the brief).

The opinion of the court was delivered by

WALLACE, J.A.D.

Defendants Stanley Stanton and Edward Stanton appeal from a bench trial verdict in favor of plaintiff Paula De Pontrex Oachs ordering Stanley to reconvey certain property to plaintiff, and from an order denying their motions for reconsideration. Although submitted in separate briefs, defendants essentially contend that the trial court misapplied the Rules of Professional Conduct; that a fully executed gift cannot be set aside; that after finding at trial that plaintiff was not dominated by Stanley or Edward, the trial court cannot base its denial of Stanley's motion for reconsideration on a contradictory finding of dependence; and the trial court's judgment was the result of bias, prejudice and lack of impartiality. We reverse and remand.

The evidence developed at trial reveals the following pertinent facts. Plaintiff was ninety-three years old at the time of trial. Since 1974 she lived at 97 Dickman Drive in Lavallete. She had worked as a research doctor as well as an architect and invested in real estate. She had also piloted airplanes and sailed boats.

Plaintiff met Stanley in the 1960's. He was a policeman and worked a second job as a contractor. Stanley worked on several construction projects for plaintiff and became very friendly with her. In 1979, Stanley and his wife moved to Florida but kept in contact with plaintiff. He would call plaintiff every week and in the summer he returned to stay with plaintiff for a week or two.

In 1981 Stanley informed plaintiff that he did not intend to visit that summer because his wife was recovering from an operation. However, in June 1981, plaintiff called Stanley and asked him to come see her because she had something very important to tell

him. Stanley agreed to visit. During the visit, plaintiff told Stanley that she wanted to give her home to him because he was her closest friend and she had no close relatives.

Plaintiff asked Stanley to talk to his brother Edward, who was an attorney, about preparing the papers. Stanley telephoned Edward, handed the telephone to plaintiff, and left the room. Plaintiff and Edward discussed drafting her will and the best way to effectuate the transfer of her home to Stanley. Plaintiff was concerned about avoiding inheritance taxes. Edward suggested that plaintiff secure independent counsel to handle the transfer since his brother was involved. Plaintiff insisted that Edward handle the transaction and Edward acquiesced. However, Edward did not obtain plaintiff's written waiver of any conflict of interest.

In a letter dated June 24, 1981, Edward wrote to plaintiff that "the best way to reduce federal and state taxes is to dispose of the house while you are ... alive. This can be done by making a gift of your home or selling it.... The deed would reserve in yourself a life estate in the home." On June 30, 1981, Edward discussed with plaintiff the gift of her home to Stanley and the conditions she wished to impose on the gift. Thereafter, Edward discussed with Stanley the conditions plaintiff wished to place on the transfer of her home to him. Stanley agreed to those conditions.

Plaintiff wanted the gift to remain a secret. As a result of this, Edward inserted a purchase price of $65,000 in the agreement and deed transferring plaintiff's home to Stanley. At the time the property was worth approximately $135,000. Although plaintiff never received any consideration for the transfer of her home, Edward executed an affidavit of consideration and an affidavit on the deed indicating that plaintiff received $65,000. However, the deed did not mention plaintiff's reservation of a life estate. Rather, a separate agreement spelled out the conditions plaintiff imposed on the gift including her right to live in the home during her lifetime. The agreement also provided that Stanley would pay

plaintiff a sum adequate to cover the annual property taxes and homeowner's insurance premiums which plaintiff would then pay.

On July 2, 1981, plaintiff executed the will, deed, and agreement at her home. Thereafter, Edward, Stanley, and plaintiff drove to a notary outside of Lavallete where plaintiff executed a power of attorney that Edward had also prepared. The deed was subsequently recorded but the agreement embodying the life estate was not.

In September 1981, Edward drafted Stanley's will in which Edward was a contingent beneficiary.

For several years after the transfer Stanley paid the homeowner's insurance premiums and water bills. He would send plaintiff a check for the property taxes which she deposited in her account and then would pay the taxes. However, in 1989, Stanley began paying the property taxes directly to the Borough.

The trial judge was satisfied that plaintiff wanted to leave her house to Stanley but that she was concerned about paying inheritance tax. He found that Edward was not in a position to give her independent advice because the gift was for his brother Stanley. Although the trial judge did not find fraud, undue influence or duress, he was satisfied that because plaintiff did not receive independent advice that she was entitled to have her property transferred back to her.

Both Stanley and Edward urge on appeal that the trial judge improperly found that Edward violated *RPC* 1.8(c) which prohibits a lawyer from preparing "an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee" because the transaction in question occurred approximately three years prior to the effective date of the Rules of Professional Conduct. While we agree that the trial judge should not have applied the Rules of Professional

Conduct, we are satisfied that Edward violated the Disciplinary Rules in effect at that time.

■ *DR* 5–105 provides in pertinent part:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

(C) In situations covered by DR 5–105(A) and (B) except as prohibited by rule, opinion, directive or statute, a lawyer may represent multiple clients if he believes that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the facts and of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

Even if both clients consent to the representation, the lawyer is still prohibited from representing both clients if the lawyer does not reasonably believe that he or she can adequately represent each client. *In re Chase*, 68 *N.J.* 392, 396, 346 *A.*2d 89 (1975).

■ In the present case Edward testified that he did not represent Stanley in the transfer of plaintiff's home. However, he admitted that he provided legal services to Stanley both prior to and after the transaction. Prior to 1981, Edward represented Stanley when he sold his home in Lavallete to move to Florida. In September 1981, Edward drafted wills for Stanley and his wife. Under these circumstances, it was unreasonable for Edward to conclude that he could objectively represent plaintiff's interests.

Even if we were to conclude that Edward reasonably believed that he could adequately represent plaintiff in a transaction involving his brother, Edward failed to disclose the facts and the "possible effect of such representation on the exercise of his independent professional judgment...." *DR* 5–105(C). Edward had a duty to explain how his personal and professional relationship with his brother could impact upon his representation of plaintiff. He failed to do this and therefore, Edward violated *DR*

5–105(A) and (C). Consequently, despite the trial court's reliance on the Rules of Professional Conduct which were not in effect in 1981, we are satisfied that Edward's violation of the then existing Disciplinary Rules, supports the trial court's finding that plaintiff did not receive independent advice.

■ The crucial issue is whether the trial court applied the proper standard in concluding that Edward's lack of independence required that the property be transferred to plaintiff. The principles which govern this case were set forth in *In re Dodge*, 50 *N.J.* 192, 234 *A.*2d 65 (1967). When a confidential relationship exists between a donor and donee, the donee must show that the gift was voluntary, and not the result of coercion, undue influence or deception. *Id.* at 227, 234 *A.*2d 65. In such a case, the donee bears the burden of establishing the validity of the gift, even if the donee did not dominate the will of the donor. *Ibid.* This rule was designed to protect the donor from a voluntary decision induced by the confidential relationship the donor shares with the donee. *Id.* at 228, 234 *A.*2d 65.

[W]henever it appears that the relations between the parties to an *inter vivos* gift are of such character that in reasonable probability they do not deal with each other on terms of equality because one has given friendship and justifiably reposes confidence in the other, that on the donee's side superior knowledge exists as to the nature of the transaction proposed by him, as well as the detriment to be suffered by the donor if he engages in it, and the donee fails to see to it that the donor thoroughly understands its nature and consequences, equity should regard it as voidable at the instance of the donor or his representatives. In such a situation the donee must show by explicit and convincing evidence that the donor intended to make a present gift and unmistakably intended to relinquish permanently the ownership of the subject of the gift.

[*Ibid.*]

More recently the Supreme Court reinforced these principles in *Pascale v. Pascale*, 113 *N.J.* 20, 549 *A.*2d 782 (1988). In *Pascale* the father sought to set aside the transfer of his stock to his son. *Id.* at 22, 549 *A.*2d 782. The attorney who represented the father in the stock transfer also represented the son. *Ibid.* The Court noted that "[i]n respect of an *inter vivos* gift, a presumption of undue influence arises when the contestant proves that the donee dominated the will of the donor ... or when a confidential

relationship exists between donor and donee. . . ." *Id.* at 30, 549 *A.*2d 782 (citations omitted). Further, if the presumption of undue influence is applicable, "the donee has the burden of showing by clear and convincing evidence not only that 'no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that it was well understood.' " *Id.* at 31, 549 *A.*2d 782 (citations omitted). More importantly, the Court stated that "[w]hen the donor is not dependent on the donee, however, 'independent advice is not a prerequisite to the validity of an improvident gift even though the relationship between the parties is one of trust and confidence.' " *Id.* at 31, 549 *A.*2d 782 (citation omitted).

■ In the present case, Stanley testified that he thought of plaintiff as his sister. Further Edward testified that Stanley was plaintiff's closest friend. At trial, the trial court concluded that Stanley was a close friend of plaintiff but that Stanley was not in a dominant position. We equate this to a finding that a confidential relationship existed between Stanley and plaintiff. The trial court's subsequent finding at the motion for reconsideration that plaintiff was "dependent on the Stantons," is simply not supported by the record. *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974).

■ Consistent with the principles set forth in *Dodge* and *Pascale,* independent advice here was not a prerequisite to the validity of the transfer. Consequently, the trial court's finding that Edward's conflict position, without more, mandated return of the property to plaintiff, was in error.

■ Rather, once the trial court concluded that a confidential relationship existed, and that Edward was not in a position to render independent advice, it should have determined whether defendants had shown by clear and convincing evidence that the gift was not the result of either deception or undue influence and that the transaction was fair, voluntary, and well understood. *In re Dodge, supra,* 50 *N.J.* at 227, 234 *A.*2d 65. Stated another way,

notwithstanding the absence of independent counsel, did plaintiff fully understand the consequences of the transfer of her property to Stanley. *See Pascale, supra,* 113 *N.J.* at 38, 549 *A.2d* 782. The trial court found that it was plaintiff's idea to leave her home to Stanley in her will but that she also wanted to reduce or eliminate inheritance taxes. Unfortunately, the trial court never determined whether plaintiff fully understood the consequences of the transfer.

Our review of the record reveals that the evidence was conflicting on the issue of whether plaintiff fully understood the consequences of the transfer. On the one hand the evidence was overwhelming that plaintiff was a strong independent person. She was a doctor, a pilot and an architect. She had purchased property in New Jersey and Maryland and knew what deeds were. On the other hand, the record is silent regarding whether plaintiff understood the full consequences of the transfer. There was no analysis done of the inheritance tax consequences of an inter vivos gift with a life estate as opposed to a testamentary gift of the property. In fact, there may be little or no difference in the inheritance tax consequences. *See N.J.S.A.* 54:34-1 to -13. Moreover, the record is silent whether plaintiff understood that once the transfer took place, she could not change her mind.

We are satisfied that the remaining contentions advanced are without merit and require no further discussion. *R.* 2:11-3(e)(1)(E).

In summary, we are satisfied that a confidential relationship existed between plaintiff and Stanley although, plaintiff was not dependent on Stanley. Edward was not in a position to render independent advice but that would not necessarily invalidate the transfer as long as plaintiff fully understood the consequences of the transfer. Consequently, we remand to the trial court to determine whether defendants presented clear and convincing evidence that plaintiff fully understood the consequences of the property transfer. If so, judgment should be entered in favor of

defendants; and if not, invalidation of the transfer was appropriate.

Reversed and remanded.